# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARATHON PETROLEUM COMPANY, LP,
a Delaware Limited Partnership,

                Plaintiff,

       -vs-                                  Case No. 12-C-869

MT. EVEREST REAL ESTATE
HOLDING COMPANY, LLC,
a Wisconsin Limited Liability Company, and
RAMKRISHNA SUBEDI, individually,

                Defendants.

## DECISION AND ORDER

The plaintiff, Marathon Petroleum Company, moves to enjoin the defendants, Mt. Everest Real Estate Holding Company LLC and Ramkrishna Subedi, from selling, storing, marketing or advertising any petroleum products other than Marathon branded petroleum products at a Milwaukee gas station. The gas station, located at the corner of W. Morgan Avenue and S. 13th Street, was purchased by the defendants subject to a Limited Warranty Deed, which provides that the station "shall not be used for the sale, marketing, storage or advertising of motor fuels except the trademarked products of MARATHON ASHLAND PETROLEUM LLC, its successors and assigns, purchased either directly from MARATHON ASHLAND PETROLEUM, LLC, its successors and assigns or from a MARATHON® branded jobber . . . ," a restriction which expires in the year 2030. This matter was initially assigned to Chief Judge Clevert, who denied the motion for a temporary restraining order

because Marathon did not present evidence "indicating that a jobber has been available to provide defendants with Marathon fuel as required by the [contract] at issue." ECF No. 8, September 7, 2012 Order Denying Motion for a Temporary Restraining Order. The motion for a preliminary injunction is now before the Court for consideration.

A party seeking a preliminary injunction must satisfy three requirements. First, that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims. Second, that traditional legal remedies would be inadequate. Third, that its claim has some likelihood of succeeding on the merits. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If a party satisfies these criteria, then the Court must proceed to the "balancing phase of the analysis." *Id.* In an "attempt to minimize the cost of potential error," the Court "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (internal citations omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. In so doing, the court employs a sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily the need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Id.* (internal citations omitted).

As noted, Judge Clevert denied the request for emergency relief because it was unclear whether jobbers were available to sell Marathon petroleum products. That lack of

clarity has been alleviated in the subsequent submissions by the parties. Multiple jobbers are "ready, willing and able" to provide the defendants with Marathon® branded petroleum products. ECF No. 9, Exhibits B and C. Defendants argue that they have a right to purchase directly from Marathon, thereby avoiding the higher price and often onerous requirements imposed by third-party vendors. But the use restriction makes perfectly clear that the defendants have a duty to sell Marathon products, not a right to choose their source. Moreover, even if the language could be construed to require Marathon to sell directly, the defendants have ignored Marathon's invitation to become an authorized Marathon jobber, which would allow them to circumvent the price hikes associated with "middle-men jobbers." In any event, the defendants have a duty to sell Marathon petroleum products, and so long as such products are made available and the defendants refuse to sell them, the defendants are breaching the use restriction. Marathon has demonstrated a very high likelihood of success on the merits.

With regard to irreparable harm, the defendants invoke the doctrine of laches, arguing that Marathon allowed the station to operate for approximately two years as an unbranded station prior to the defendants acquiring the station in 2011. "[D]elay is only one among several factors to be considered; [the] cases do not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979). A defendant must have been "lulled into a false sense of security or . . . acted in reliance on the plaintiff's delay." *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 992 (N.D. Ill. 2000). Here, the

-3-

Case 2:12-cv-00869-RTR   Filed 10/24/12   Page 3 of 6   Document 24

defendants admit that they had "every intention of utilizing plaintiff's brand when they purchased the station." Therefore, it is hard to see how the pre-acquisition use of the property is at all relevant to the issue of detrimental reliance. The defendants simply claim that they were prevented from purchasing directly from Marathon, but as discussed above, they have no right to choose their source under the deed restriction. Moreover, Marathon has *never* sold fuel directly to the station in question. That is not how Marathon runs its business and is not how the industry works in general. *See Tom-Lin Enterprises, Inc. v. Sunoco, Inc.*, 349 F. 3d 277, 279 (6th Cir. 2003) ("independent retailers pay a different price for gasoline than the jobber . . ."). The defendants are experienced in the industry and should have known this. At minimum, they should have conducted a thorough investigation to understand how Marathon does business prior to investing in the property. Accordingly, Marathon's alleged delay in pursuing relief cannot preclude a finding of irreparable harm and inadequate remedy at law. Marathon still has goodwill in the location, even if there was a period of time when Marathon products were not sold there. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages"); *Girl Scouts*, 549 F.3d at 1089 ("risk to [an] organization's significant goodwill . . . can constitute irreparable harm"). As explained by Marathon's district sales manager, "Marathon placed use restrictions at strategic geographic locations, including the subject premises, to insure that Marathon has a branded station at that location. Proximity to other brands and other Marathon® branded retail locations were considered for the use restriction. Defendants'

violation of the use restriction and labeling the retail location as 'HICO,' when another 'HICO' is also on the same intersection has caused and continued to cause Marathon to lose market share in the particular geographical location." ECF No. 9-1, Exhibit A.

Finally, with regard to the balance of harms, the defendants would not suffer irreparable harm if the Court granted Marathon's requested injunction. If the Court is somehow wrong in concluding that the defendants must purchase from jobbers, the defendants would have an adequate remedy at law to make themselves whole for the increase in gas prices. Moreover, the defendants can engage in "self-help" by pursuing Marathon's offer to become an authorized jobber. *See, e.g., Ticketmaster LLC v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096, 1115 (C.D. Cal. 2007) (discussing self-help in the context of irreparable harm). The irreparable harm to Marathon's good will clearly outweighs any speculative (or non-existent) irreparable harm that might befall the defendants, and the scale is tipped in Marathon's favor given the likelihood that it will succeed in this case. As for the public interest, it is served when courts enforce covenants which restrict the use of land. *Chick-Fil-A, Inc. v. CFT Dev't, LLC*, 652 F. Supp. 2d 1252, 1263 (M.D. Fla. 2009) ("Restrictive covenants serve a valid public purpose by enabling purchasers of property to control the development and use of property and to protect property owners' interest in land").

-5-

Case 2:12-cv-00869-RTR   Filed 10/24/12   Page 5 of 6   Document 24

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Marathon's motion for a preliminary injunction [ECF No. 5] is **GRANTED**; and

2. The defendants, Mt. Everest Real Estate Holding Company LLC and Ramkrishna Subedi, are **ENJOINED** from engaging in any actions that would not be consistent with the restrictions and covenants contained in the Limited Warranty Deed. Accordingly, the defendants are **ENJOINED** from selling, storing, marketing or advertising any petroleum products at the premises located at 3515 South 13th Street and/or 1301 W. Morgan Ave., Milwaukee, Wisconsin, other than Marathon® branded products.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2012.

                                            **BY THE COURT:**

                                            */s/ Rudolph T. Randa*
                                            **HON. RUDOLPH T. RANDA**
                                            **U.S. District Judge**